FRANK RACANATI, PLAINTIFF-RESPONDENT, v. BLACK DIAMOND STEVEDORING CO., INC., DEFENDANT-APPELLANT.

Submitted May 4, 1943—Decided June 24, 1943.

Before BROGAN, CHIEF JUSTICE, and Justices BODINE and COLIE.

For the plaintiff-respondent, *Nathan Baker.*

For the defendant-appellant, *Carpenter, Gilmour & Dwyer* (*Patrick A. Dwyer* and *James P. Beggans,* of counsel).

The opinion of the court was delivered by

COLIE, J. Black Diamond Stevedoring Co., Inc., appeals from a judgment of $1,195.98 in favor of Frank Racanati entered against it in the Hudson County Court of Common Pleas.

The complaint sounds in fraud and deceit and sets up that Frank Racanati on March 14th, 1935, sustained an injury resulting in a broken right collar bone while employed as a stevedore by the defendant company. He was treated by a doctor of the defendant's choosing and received from his employer temporary disability payments totaling $128. The complaint then recites that in accordance with the provisions of the Longshoremen's and Harbor Workers' Compensation Act, 33 *U. S. C. A.,* § 901, *et seq.,* he was entitled to additional compensation for permanent disability to his right arm, but that the defendant, by its agent, well knowing that he was entitled to such additional compensation for partial perma-

nent disability, nevertheless represented that there was no permanent disability. Subsequently, on June 5th, 1940, while still in the employ of the defendant, he sustained another accident involving his right arm and filed a claim for compensation with the United States Employees' Compensation Commission, and then he learned, for the first time, of the false and fraudulent representations of the defendant. The complaint alleges that relying upon these false representations of the defendant, Mr. Racanati did not prosecute his claim before the Commission and took no action to obtain compensation for the permanent disability which he sustained. The gravamen of the complaint is that the plaintiff "was deprived of his claim for compensation for permanent partial disability, as a result of it now being barred by the expiration of the time limit provided in said statute" and that "plaintiff lost sums of money which he could have obtained or recovered."

At the trial, plaintiff's wife testified that she had a conversation with a Mr. Donohue, a representative of the defendant corporation, who handled its claims for compensation to injured employees in which Mr. Donohue said: "Well, Dr. Mathews sent him a letter he is all right, there is no permanent disability." In answer to a question of Mrs. Racanati as to whether her husband would get any money, Mr. Donohue said: "What do you want, he is all right. You had better go back to work, if you make a case you are going to lose the case and the job also." There were also in evidence, reports of a Dr. Mathews, dated April 25th, 1935, in which he gave it as his opinion that the plaintiff would be temporarily disabled until about May 6th and also a report dated May 4th, 1935, advising Mr. Donohue that Dr. Mathews had discharged the plaintiff from further treatment, but that there was a slight restriction of motion at the shoulder which would completely disappear in a few weeks' time.

Subsequent to May 4th, 1935, plaintiff received a number of communications from the United States Employees' Compensation Commission telling him to report for final physical examination. All were disregarded and plaintiff continued in the employ of the defendant at his usual line of work

until June 5th, 1940, when he sustained the further injury mentioned above. He filed a claim for compensation therefor with the Commission. When the matter came on for hearing in November, 1940, Dr. Mathews testified that he then found, for the first time, a five per cent. disability of the right arm due to a callus formation at the site of the 1935 fracture. The plaintiff produced a doctor who first examined plaintiff more than seven years after the accident in 1935, and who estimated the permanent disability from the 1935 accident as 20 to 25 per cent. It was brought out that plaintiff had testified at a hearing in November, 1940, that he was disabled for nine weeks as a result of the 1935 injury. From Mr. Donohue, called on behalf of defendant, it was brought out that he had, in 1935, filed reports with the Commission indicating that there was "possible schedule," i. e., possible permanent disability.

This action being one for fraud and deceit, it is incumbent upon the plaintiff to prove three elements (1) that the representations were made with the intent that they should be acted upon; (2) that the representations were false and that the defendant knew them to be false at the time they were made; (3) that the plaintiff, believing the representations true, acted upon them to his injury. *Plimpton* v. *Friedberg,* 110 *N. J. L.* 427. The essential constituents of an action for deceit have been succinctly stated in the case of *Arthur* v. *Griswold,* 55 *N. Y.* 400 to be "representation, falsity, scienter, deception and injury."

Examining the proofs submitted in this case, we find that the plaintiff has failed to meet the second and third requirements laid down in *Plimpton* v. *Friedberg, supra.* Assuming, as we must, the truth of all the facts in evidence and drawing all the reasonable inferences therefrom in favor of the plaintiff, nevertheless, there is no proof that Mr. Donohue had any knowledge that he was untruthful when he made the statements attributed to him by Mrs. Racanati. He then had before him Dr. Mathews' report of April 25th, 1935, which stated that the temporary disability would last until May 6th and that no further treatments would be needed beyond that date. Coupled with that was the doctor's subsequent

report of May 4th that the plaintiff had been discharged from further treatment and that there remained but a slight restriction of motion which would completely disappear in a few weeks' time. As late as November, 1940, Mr. Racanati testified before the Commission that after his return to work in 1935 and until the second injury in 1940 he felt no disability. It is almost a necessary conclusion that the thought of fraudulent representations and deceit were conceived after, and only after, Dr. Mathews, in 1940, testified to a permanent disability of five per cent., due to a formation of callus which was not present when he made his reports in 1935.

Finally, plaintiff's proof is insufficient on the score ,of injury arising out of the asserted deceit. Mr. Racanati's right to compensation is statutory. The Longshoremen's and Harbor Workers' Compensation Act makes the liability of the employer for compensation exclusive; sets up the United States Employees' Compensation Commission to administer the provisions of the act; vests in the Commission, acting through deputies, the right to determine the existence of permanent disability and the extent thereof. In the instant case the Commission never passed upon the question of permanent disability, and until it did pass upon and fix the percentage of disability, there was no fixed starting point from which the jury in the Pleas could assess damages. Any award that a jury made would of necessity be based upon conjecture and surmise as to what the Commission would have found the percentage of permanent disability to be. Proof of pecuniary loss is an essential element in an action grounded in deceit and, lacking such proof, the action cannot be maintained. Neither fraud without damage nor damage without fraud is sufficient to support an action for deceit. 23 *Amer. Jur.* 772, § 20.

The trial court erred in denying the defendant's motion for a nonsuit. The judgment under appeal is reversed, with costs.